**UNITED STATES of America,**
**Appellee,**

v.

**Joseph MORELLO and Rosario Farulla,**
**Defendants-Appellants.**

**No. 81, Docket 24690.**

United States Court of Appeals
Second Circuit.

Argued Oct. 18, 1957.

Decided Dec. 31, 1957.

Robert Mitchell, New York City, for defendants-appellants.

George C. Mantzoros, Asst. United States Atty., S.D.N.Y., New York City (Paul W. Williams, U. S. Atty., and Arthur B. Kramer, Asst. U. S. Atty., S.D.N.Y.), New York City, for appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal by defendants Morello and Farulla from convictions for conspiracy, in violation of 18 U.S.C.A. § 371, to import narcotics in violation of the narcotic laws, 21 U.S.C.A. §§ 173, 174. The trial of a third defendant, DiGiovanni, was severed. Other persons, including one Migliori, who died before trial, and one Sibille, a seaman, were named as co-conspirators but not as defendants.

The government's evidence, if believed, tended to prove the following. One Bruno, an ex-convict, while traveling in Europe, met DiGiovanni in France. They became friendly and DiGiovanni told him that some Americans owed him money for heroin he had shipped to them. Bruno, on his return to the United States immediately reported the information received from DiGiovanni to the narcotics authorities. Under their direction he carried on correspondence with DiGiovanni which soon led to Morello and Farulla. Zirilli, an agent of the Narcotics Bureau, together with Bruno, who had been made a special agent of the Bureau, on three separate occasions discussed with the appellants the possibility of paying DiGiovanni off for his former shipment and resuming operations. The appellants, through the agents, offered to form a partnership with DiGiovanni for smuggling heroin into the United States. The offer was conveyed to DiGiovanni by Bruno acting as an ostensible party to the conspiracy first by letter and shortly thereafter in person in Marseilles. DiGiovanni agreed to cooperate and thereafter placed a shipment of heroin on the S. S. Flandre with a seaman, Sibille, as courier. Sibille reported his arrival in New York to Zirilli. As previously agreed with the appellants Zirilli informed them of the arrival of the heroin and the appellants said they would remove it from the ship. At the last minute they begged off and, unknown to them, Zirilli boarded the ship next day and on payment to Sibille of $2,400 in official advance funds removed the heroin, turning it over to the federal authorities. Another shipment was agreed upon and Bruno made the arrangements with DiGiovanni. But before the shipment arrived the appellants became suspicious of the agents and broke contact. The arrests followed shortly.

■■ There was ample evidence to support the convictions and no claim to the contrary is made. But the appellants make three claims of error in the receipt of evidence. The first relates to Bruno's testimony that DiGiovanni had told him that he would give him a sample of the heroin to be contained in a future shipment and that, on the following morning, DiGiovanni did take samples from a larger package which he put into glassine bags, one of which he gave to Bruno for comparison with the main shipment of heroin when it should be received in New York. The sample thus given to Bruno was not offered in evidence nor was there evidence of a chemical analysis showing that the content was in fact a narcotic. However, the testimony came in without objection and when at the close of the evidence the judge indicated that the absence of analysis affected only the weight—and not the admissibility—of the evidence, appellants' counsel apparently acquiesced in the ruling and made no motion to

strike. We think the ruling was clearly right. Poliafico v. United States, 6 Cir., 237 F.2d 97, 106, certiorari denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597. The background evidence was such as to furnish ample ground for inference that the material in question was heroin and that DiGiovanni's words and deeds in connection with the incident were binding both on him and on the appellants if found by independent evidence to be co-conspirators.

Appellants next contend that it was erroneous and seriously prejudicial to admit in evidence copy of a letter (Exhibit 2) written by Bruno to DiGiovanni under the direction of the Narcotics Bureau and not by the authority or in the presence of the appellants. In this letter Bruno, posing as a friend, offered his services to collect what was due Di-Giovanni for a shipment of narcotics introduced into the United States prior to the conspiracy charged in this indictment. In fact this letter was designed to elicit from DiGiovanni information disclosing his confederates in the United States. It was received in evidence over objection but subject to connection by evidence which should show that DiGiovanni was a member of the conspiracy.

This basis of admission is untenable because this was a letter sent *to* an alleged co-conspirator: it was not an act or declaration *of or by* a co-conspirator. Yet the government seeks to sustain its admission on the basis of the co-conspirator exception to the hearsay rule. No case has been cited to us which has ever so applied the conspiracy rule as to allow introduction of words or deeds *of* a government agent *to* an alleged co-conspirator out of the presence of the defendants. Certainly the reason for the exception ceases to exist where, in fact, there is no community of interest between actor and defendant. Nor does the conspiracy rule apply to make the words and deeds of the narcotic agents admissible merely because the appellants may have believed that the agents were their co-conspirators,—

a theory which was advanced in colloquy between court and counsel below. For it is not the appellants' beliefs which are the determinative criteria of admissibility. Only acts or declarations are admissible against the appellants which were made by one who in fact was a co-conspirator and which were in fact in furtherance of the common objective of the conspirators. Since here the letter was not sent by a conspirator in furtherance of an objective common to the sender and his co-conspirators it was erroneous to receive it under the conspiracy rule.

However, the letter might have been admissible on another theory—that of verbal completeness. Since the reply letter of DiGiovanni was properly admissible subject to connection, Bruno's letter may have been admissible to bring out the meaning of DiGiovanni's reply. 7 Wigmore on Evidence (3rd Ed.) § 2104. But we need not do more than note this possibility since, even if the letter was not admissible on any theory, the error was totally harmless. For Bruno's letter contained not one syllable which could have damaged the appellants who were not even mentioned therein. Indeed, from all the evidence which preceded its admission it is apparent that Bruno, when he wrote the letter, did not even know the identity of the appellants. Consequently, the error, if any, was harmless and not cause for reversal. Federal Rules of Criminal Procedure, Rule 52(a), 18 U.S.C.A.

We note that the same mistaken theory which led to the admission of the letter also gave rise to the court's refusal to charge expressly that the words and deeds of Bruno and Zirilli not said or done in the appellants' presence could not bind the appellants. Though such a charge would have been proper, appellants do not appeal from the refusal to give it—and with good reason. For, in effect, the jury had been so instructed. The judge read to the jury the names of the co-conspirators named in the indictment. Whenever he used the word "co-conspirator" it was in reference to

those named. Further, the judge stated that a person did not become a co-conspirator "unless he deliberately joins and concurs" in the agreement and knows what he is getting into and the purpose of the agreement. Then on the subject of binding acts of co-conspirators the judge properly stated that the acts had to be "in furtherance of the common purpose." It was thus made reasonably apparent to the jury that neither Bruno nor Zirilli qualified as co-conspirators and certainly every juror was well aware that the agents' acts had not been in "furtherance" of the conspiracy but, rather, were antithetical to everything the conspiracy stood for. It is hard to see that counsel's request would have added anything and, though it might have been properly granted, it was not reversible error to refuse it.

■■ The appellants also predicate error on the admission of Bruno's testimony that he gave DiGiovanni $2,800 in funds furnished by the narcotic authorities on account of the shipment of heroin which the agent, Zirilli, carried off the S.S. Flandre. It is true that the appellants did not personally participate in the receipt of this shipment: they knew neither that it had been brought ashore from the S.S. Flandre nor that the $2,800 payment was made. But there was evidence that they were members of the conspiracy previous to the arrival in New York of this shipment and that thereafter they actively participated in plans for a continuation of the conspiracy which was in active existence when the $2,800 payment was made. Under these circumstances, we think that the evidence was properly received. Hyde v. United States, 225 U. S. 347, 32 S.Ct. 793, 56 L.Ed. 1114; United States v. Farina, 2 Cir., 218 F.2d 62; United States v. Iacullo, 7 Cir., 226 F.2d 788, certiorari denied 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839; Poliafico v. United States, supra. The fact that the conspiracy was not carried through to fruition by the appellants and their co-conspirators is not a defense to the conspiracy charge under 18 U.S.C.A. 371. United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211. The receipt of the payment by DiGiovanni was competent evidence against DiGiovanni and, if the jury found by independent evidence that the appellants were members of the conspiracy, against the appellants also.

■■■ The other claims of error which the appellants press are so devoid of merit as to require little comment. Since there was ample evidence to make a case for the jury, the appellants were not entitled to a peremptory instruction of acquittal in the event that the jury should disbelieve Bruno's testimony as to DiGiovanni. It was for the jury to apply the law, as to which they had been correctly instructed, to the facts which they should find proved. Nor is a trivial misstatement of fact in the charge ground for the reversal of a five days' trial fairly conducted, especially when no objection was raised until appeal. And, lastly, appellants' contention that the verdict was inconsistent with the judge's charge as to unlawful importation also is wholly without substance. Unlawful importation had been accomplished when the heroin, in Sibille's custody, had been brought within the territorial waters of the United States. Palmero v. United States, 1 Cir., 112 F.2d 922; Pon Wing Quong v. United States, 9 Cir., 111 F.2d 751, 756. The fact of importation was not affected by the fact that the heroin was removed from the ship by a narcotic agent rather than a co-conspirator. Palmero v. United States, supra. Neither the charge nor the verdict was inconsistent with these facts and rules of law. And it may be added that proof of the substantive crime of unlawful importation was not essential to prove the crime of conspiracy as charged.

Affirmed.