**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Phillip VITTORIA, Defendant-Appellant.**
**No. 13001.**

United States Court of Appeals
Seventh Circuit.

Dec. 15, 1960.

William C. Starke, Chicago, Ill. (Howard T. Savage, Chicago, Ill., of counsel), for appellant.

Robert Tieken, U. S. Atty., John J. Quan, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel), for appellee.

Before SCHNACKENBERG, MAJOR and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Defendant, Phillip Vittoria, was indicted on a charge of feloniously conspiring with five co-defendants, two other named

persons, and others whose names were unknown, beginning on or about July 1, 1957, and continuing to the date of indictment, November 20, 1958, to receive, conceal, buy, sell and facilitate the transportation and concealment of narcotics, in violation of Title 21 U.S.C.A. § 174, as amended by the Narcotic Control Act of 1956. All defendants waived trial by jury. During the course of trial, the five co-defendants withdrew pleas of not guilty and entered pleas of guilty. The trial proceeded on Vittoria's plea of not guilty. The District Court found Vittoria guilty as charged in the indictment and sentenced him to imprisonment for a term of twelve years.

In his appeal from that judgment, defendant argues that he was not proven to be a part of the conspiracy charged in the indictment; that the evidence shows, at worst, only that he may have been engaged in some criminal activity apart from the conspiracy charged; that there is a fatal variance between the indictment and proof; and that evidence of acts and declarations of co-defendants and purported co-conspirators done and said out of defendant's presence, and evidence obtained in violation of the statutes of Illinois by "electronic eavesdropping" was improperly admitted against defendant.

One of the alleged co-conspirators, but not a co-defendant, was James V. Chiaro. He testified that he, with co-defendant John Dispensa, or on his instructions, made numerous trips to New York City, during which Chiaro carried a brief case given him by Dispensa; that, in New York, on some of the trips, Chiaro would hand the brief case to co-defendants Saverio Schifano, Dominick Gentile, and Nicholas Exposito, sometimes individually, sometimes together, to whom money would be paid; and that on return, the brief case would contain a white powdery substance.

Chiaro testified further that in Chicago, on return from New York, on Dispensa's instructions, or with Dispensa, he would measure out this white substance, adding quinine and milk sugar, into small, tinfoil wrapped packages, which would be distributed to co-defendant Morris Rosenguard, Lawrence Lemons, an alleged co-conspirator, and others. He testified further that on March 2, 1958, he had acquired such a white powdery substance, as heretofore indicated, and had packaged it in the manner aforesaid. Two of the small packages were delivered to Lemons and the rest placed in a safety deposit box. Later Chiaro had delivered some of the material from the safety deposit box to Rosenguard. Chiaro testified that he sold the remainder of the contents of the safety deposit box, on three different occasions, to a buyer who, unknown to Chiaro, was Federal Narcotic Agent Everett Paul Leek. Agent Leek testified to these transactions. The substance sold to Agent Leek on these occasions was examined by a chemist and found in each case to contain heroin hydrochloride. Chiaro was arrested on June 26, 1958, after which he assisted the Federal Bureau of Narcotics. On several occasions he engaged in conversations with various members of the alleged conspiracy, including Vittoria, while carrying electronic equipment to increase the audibility of those conversations and to record them on tape.

The details of Chiaro's testimony were in large part corroborated by such evidence as aeroplane tickets, hotel and motel registration records, and the record of his arrest and fine while traveling in Dispensa's automobile on one trip. There was substantial evidence to support the finding that a conspiracy existed to buy heroin in New York City and package and distribute it in Chicago.

Chiaro testified that he met defendant, Phillip Vittoria, in the summer of 1957. He stated that after one of the trips to New York, in the summer of 1957, John Dispensa had come to Chiaro's home, in the 1500 block east on 51st, in Chicago, and had asked Chiaro to deliver something. Chiaro testified further that he had gone downstairs with Dispensa, had entered Dispensa's automobile, and had waited there with Dispensa.

After a while, Vittoria, in another automobile, pulled up about half a block away. Dispensa gave Chiaro a tinfoil package which corresponded in appearance to the packages in which Chiaro and Dispensa had placed the white substance brought from New York. Chiaro took the package over to Vittoria, who rolled down his automobile window and took it. Chiaro merely said, "This is from John." When he returned to Dispensa's automobile, Dispensa paid Chiaro $10.

About two weeks later, Dispensa told Chiaro to get a package from Vittoria. Dispensa and Chiaro both went to meet Vittoria. Dispensa then gave a package to Vittoria, who gave it to Chiaro with instructions to take Vittoria's automobile, drive to 57th and Princeton and wait. Chiaro did so. Later, both Dispensa and Vittoria pulled up behind Chiaro in Dispensa's automobile. Chiaro walked back to them and was told by one or the other to put the package among the weeds near the railroad at 56th and Wallace. After doing that, Chiaro returned to Dispensa who told him that the package couldn't be found, and instructed him to get the package and give it to someone who would be walking down the street. Chiaro did get the package out of the weeds, and seeing Lemons and Vittoria coming down the street, gave it to Lemons. Chiaro testified further that in the summer of 1957, he had asked Phillip Vittoria to speak to Dispensa about $200 which Chiaro needed, and that the following conversation took place:

"Chiaro: Philly, I thought you had some interest in this.

"Vittoria: I do. I'm supposed to have a half interest in this. I'm supposed to be—tell things to and know what's going on myself. I sure will tell him to give it to you."
[Transcript p. 244]

Defendant's counsel argues that these statements by Vittoria may well have been lies designed to draw information from Chiaro. This issue would be decided by the trier of the facts. It was equally reasonable to accept these statements as factually true.

Vittoria lived at 256 West 23rd Place, in Chicago. On two occasions, Federal Narcotic Agents observed him conversing with Dispensa at Dispensa's Pizzeria in Evergreen Park. The Illinois Bell Telephone Company's records showed several calls, made in the summer and fall of 1957, from a telephone listed to Dispensa at "Connie's Pizza Pie" in Evergreen Park, to a telephone for which the listed subscriber from March 9, 1948 to the time of the trial was Bert Vittoria at 256 West 23rd Place, Chicago. Federal Narcotic Agent Irving Lipschutz testified that Phillip Vittoria was arrested at that address, where he resided with his brother who was present at the time. The brother's name was not stated, however. After his arrest on November 20, 1958, Philip Vittoria was placed in a cell with John Dispensa. Vittoria then stated that he did not know Dispensa. This was apparently a false exculpatory statement indicating guilty consciousness. United States v. Farina, 2 Cir., 1954, 218 F.2d 62, 63. Agent Lipschutz testified that as he walked away from the cell, he heard Dispensa say, "What did you bring them on me for?" Agent Lipschutz then returned and said to Vittoria, "I thought you said you did not know John," whereupon Vittoria merely shrugged.

On November 15, 1958, armed with an electronic transmitter, Chiaro met Vittoria and went into the Kai-Kai restaurant on Wentworth Avenue, in Chicago, with him. Agent Lipschutz sat near them. Chiaro testified that Vittoria asked whether Dispensa had paid Dispensa's father $500 to hold the "stuff" as Dispensa had told Vittoria. Chiaro had answered that he himself held it, and, in response to further questions, had said he was paid $100 per trip. Vittoria quoted Dispensa as having said that Chiaro was paid $500 per trip plus sums of from $50 to $100, and that Dispensa still had some stuff. Chiaro told him that that would be impossible or it would be in Chiaro's safe deposit box. Vittoria

also told Chiaro that he wanted him to repeat that information to one Soupy, and that nothing would happen to Chiaro, only to Dispensa. Chiaro asked Vittoria to "o.k." him in New York, and Vittoria said he would but "I don't want you to mess me around because they won't hold you responsible, they'll hold me." [Transcript p. 125]

Pertinent parts of this conversation were overheard by Agent Lipschutz who sat nearby and by Agent Arthur E. Doll by means of the transmitter which Chiaro carried.

Agent Lipschutz also overheard another conversation between Chiaro and Vittoria that same day at the Covered Wagon restaurant at Cermak and Michigan, in Chicago, to which Chiaro testified in detail. Vittoria told Chiaro not to worry about being "o.k.'d" in New York, but to be sure to have Exposito call from New York as Vittoria wanted to discuss with Exposito a few things which had been going on. [Transcript p. 134]

■ It would thus appear that there was evidence to support the finding that Vittoria participated in the conspiracy as a partner. He knew about the trips to New York; he knew the name of Exposito, a supplier of the drugs; he had participated in deliveries of two packages identical in appearance with the packages containing narcotics. It was not essential to prove that he knew all of the details of this one conspiracy, which extended over a period of time, to obtain narcotics in New York and to dilute, repackage and sell them in Chicago. Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 104–105, certiorari denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597. Every overt act of each of the co-conspirators was the act of all. Brown v. Elliott, 1912, 225 U.S. 392, 400, 32 S.Ct. 812, 815, 56 L.Ed. 1136. Numerous overt acts were proved. It was not necessary to prove each of the overt acts alleged in the indictment. We cannot agree, therefore, with defendant's assertion that failure to prove overt act No. 10 * was fatal. In any event, we are not sure that commission of overt act No. 10 could not be reasonably inferred from Chiaro's testimony about meetings between Vittoria, Dispensa, Lemons and himself in the summer of 1957. Contrary to defendant's assertion, we find that the proof in the record was sufficient to show that Vittoria was a participant in the conspiracy as a co-conspirator. Therefore it was not error to permit introduction of evidence of the acts and declarations of other co-conspirators. United States v. Sansone, 2 Cir., 1956, 231 F.2d 887, 892, certiorari denied 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500.

■ The evidence showed that Chiaro had been convicted of burglary in 1945, 1949, 1950 and 1952. Defendant comments on the fact that Chiaro, an extremely important witness in the government's case, was a convicted felon turned informer. Credibility of the witnesses is a matter for the Trial Court, sitting without a jury, as is the question of the ability of Chiaro and the other witnesses to have seen and heard the actions and statements to which they testified under the circumstances described by them.

In oral argument here and before the Trial Court, defendant's counsel contended that the conspiracy terminated when the last of the drugs were sold to Agent Leek, long prior to the conversations of November 15, 1958, and that any statements made after the termination of the conspiracy would be mere hearsay as to defendant. Our study of the evidence, particularly with reference to the conversations of November 15, 1958, indicates that the conspiracy was a continuing one, terminated as to Vittoria only by the indictment. Further New York buying trips were obviously contemplated in the future.

---

* "10. On or about July 25, 1957, John Dispensa, alias Louie and Phillip Vittoria, defendants herein, had a conversation with Lawrence Lemons, alias Sonny, a co-conspirator, but not a co-defendant, at Chicago, in the Northern District of Illinois, Eastern Division."

■ Recordings of conversations between various co-conspirators were introduced in evidence. Defendant contends that this was error because use of such recording devices violates Illinois statutes. It is admitted, however, that use of devices whereby one may overhear conversations beyond the area in which they might normally be heard does not render the evidence thus obtained inadmissible in a federal court. On Lee v. United States, 1952, 343 U.S. 747, 753–754, 72 S.Ct. 967, 96 L.Ed. 1270. As in the On Lee case, defendant was speaking indiscreetly with one he trusted and was overheard—not only indirectly through the electronic device, but directly by an agent who was several feet away. Both the agent and the confidant testified.

We have considered all other arguments raised by counsel, in briefs or oral argument, in arriving at our conclusion that the District Court's judgment must be Affirmed.