**Lesley Howard CALHOUN, Thomas Edgar Haas, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 20571.**

United States Court of Appeals Ninth Circuit.

Oct. 14, 1966.

Rehearing Denied Dec. 29, 1966.

---

Herman M. Adams, Las Vegas, Nev., for appellant Lesley Calhoun.

Keith C. Hayes, Las Vegas, Nev., for appellant Thomas Haas.

John W. Bonner, U. S. Atty., Robt. S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before BARNES, DUNIWAY, and ELY, Circuit Judges.

ELY, Circuit Judge.

In a jury trial, appellants were each convicted of two offenses against the United States. Both of them were convicted of the charge that they engaged, with a codefendant named Clounche, in a conspiracy to violate the federal prohibition against interstate transmission of extortionate communications. 18 U.S.C. § 875(d); 18 U.S.C. § 371. Each was also convicted of extortion. 18 U.S.C. § 1952. Penalties of two concurrent three-year terms of confinement were assessed, and they appeal. The codefendant Clounche, who was also convicted, has not appealed.

The seed of the crimes was the indiscretion of an Idaho businessman. During separate visits to Nevada, he succumbed to temptations offered by two prostitutes. Knowledge of the relationships came to the attention of appellants and Clounche, and a series of extortionate acts ensued. The victim, yielding first to interstate telephone calls in which it was represented that one of the women was in dire need [1] and then to threats, forwarded substantial sums of money. At last, having chosen to notify federal officers of his predicament, he received a long distance telephone call which he accepted in

---

1. It appears that the victim became genuinely attached to one of the women. He voluntarily gave her approximately $1600.-00. He caused her to visit his home community. He attempted to persuade her to abandon prostitution, offering her employment and the opportunity to become a more decent member of society. The evidence established that, during this time, she was living with appellant Calhoun. Calhoun employed the name Vitto Martinelli as an alias.

the presence of his personal attorney, an agent of the Federal Bureau of Investigation (FBI), and a stenographer who recorded the conversation. In it, the caller's request for money was attended by a threat,[2] and the victim was directed in a telegram sent later on the same day to address his telegraphic money order to Clounche. When Clounche appeared at the telegraph office in Nevada and requested the money order, he was arrested. He was thereafter, following his arraignment and on the same day, interviewed by Agent Fain of the FBI. Appellants Calhoun and Haas, following their arrests, were separately interrogated by FBI agents. They had been arraigned on January 21, 1965, and the interrogation of Calhoun commenced later in the same day, at approximately 7:14 p. m. The principal interview with Haas occurred on the following day and consumed approximately thirty-three minutes. Agent Drake interrogated both Haas and Calhoun. A fellow officer, Agent Jackson, was present during the interrogation of Calhoun.

Agents Fain and Drake, over objection, each testified to that which had been said to him by the defendants. Calhoun and Haas, ably represented by appointed counsel, present six and four points of alleged error, respectively. Only two have sufficient merit to require discussion.[3]

First, it is urged that the interrogating officers did not adequately advise Calhoun and Haas as to their right to counsel. Reliance is placed upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

■■ Appellants were not denied requests for counsel, and *Escobedo* is inapplicable. The officers carefully alerted appellants to their rights to remain silent and to procure counsel. They urge that they were not advised of their right to the appointment of counsel to represent them in advance of their interviews with the interrogating officers. Conceding that they enjoyed this right, it was not precisely defined until the issuance of the Supreme Court's opinion in Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). That opinion was announced on June 13, 1966, and its rules, as they affect this appeal, are not applicable to cases, such as this, wherein the trial commenced before the decision's date. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). It is also clear that each of the appellants, wary, knowledgeable, and free from coercion, was disinterested in legal advice at the time of his interrogation. From the testimony, it appears that each was confident of his ability to establish, by persuasion, his own innocence.

■ Next, say the appellants, the trial court committed error in admitting, without a limiting instruction, testimony as to declarations of Clounche which incriminated both Calhoun and Haas, declarations of Haas which incriminated Calhoun, and declarations of Calhoun which incriminated Haas. The prosecution concedes that there was error in the court's failure, at the time the evidence was received, to instruct the jury, in effect, that the testimony could be properly considered only as against the particular defendant who had made the claimed admissions. The concession is required. The limiting instruction should have been given. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Declarations of a conspirator, made after the conspiracy has terminated, are not binding upon his coconspirators. Krulewitch v. United

---

2. The caller stated that if money were not sent "they could make real trouble, make it real embarrassing. * * *"

3. The other contentions are (1) that the court erred in refusing to strike testimony of Agent Fain as to declarations made to him by the codefendant Clounche, (2) that there is lack of clarity in two instructions given to the jury, (3) that the court erred in denying motions for judgments of acquittal, and (4) that there was error in the denial of Calhoun's motion for new trial.

States, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790 (1949); Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L. Ed. 196 (1946). In our opinion, there was no requirement that counsel specifically request the instruction. Objection to the receiving of the evidence, so manifestly hearsay, was, of itself, sufficient to alert the district judge.

The government urges that, regardless of the error, we should affirm, and we have reached the conclusion that we should do so.

No court is able to avoid mistakes, and there is rarely a trial which is conducted with ideal perfection. This is recognized in Rule 52(a), Federal Rules of Criminal Procedure, which instructs that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

■■ If we entertained the slightest doubt of appellants' guilt, we would unhesitatingly grant them the protection of another trial. Here, however, the record as a whole, as did that in Lutwak v. United States, supra, "fairly shrieks the guilt of the parties." 344 U.S. at 619, 73 S.Ct. at 490. The admitted declarations, as they referred to others than the declarants, added relatively insignificant weight to the force of the whole convicting testimony.[4] Moreover, the district judge, in his final instructions, properly advised the jury as to the restricted manner in which the declarations, hearsay except as to the particular declarant, should be applied.

Upon the basis of the whole record, we conclude that appellants suffered no prejudice from the erroneous oversight. They were manifestly guilty of crimes which were cowardly and despicable in their conception and execution. It is unreasonable to believe that they would have been acquitted if the error had not occurred. This being so, the judgments are

Affirmed.

---

4. The evidence must be examined in the light most favorable to appellee. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir. 1966).

Disregarding the declarations, the proof established the following:

(1) A prostitute lived with the appellant Calhoun, also known as Vitto Martinelli.

(2) The victim of the extortion had become involved with the prostitute.

(3) Thereafter, in response to each of seven telephone calls, six from Nevada to Idaho and one from California to Idaho, the victim sent sums of money from Idaho to Nevada and California. Threats attended some of the callers' requests for money.

(4) In the first of the calls, on December 20, 1964, the caller identified himself at Vitto Martinelli and directed that a Western Union money order be sent to Lesley Calhoun at a given street address. In the second call, on December 24, 1964, the caller identified himself as Lesley Calhoun ("He might have said Vitto * * * I knew the two names were the same person.") and directed that the money be sent to "Lesley H. Calhoun" at the same address as before. In the third call, "at the end of December," the caller named himself as Lesley Calhoun and a telegraph money order was sent on January 2, 1965. It was ordered payable to Calhoun and addressed as before. The fourth call was made on January 5, 1965, from California. The caller identified himself as Calhoun and money was sent to him.

(5) On January 13, 1965, the victim received a fifth call, this from an unknown person who revealed his knowledge that money had previously been sent to "Vitto Martinelli." A threat was made, and the victim complied with the caller's directive to telegraph $2138.00 to "Thomas E. Haas."

(6) After a call "around the 16th of January [1965]" in which $800.00 was requested of the victim, he contacted the FBI.

(7) The final telephone call, on January 21, 1965, was monitored by an FBI agent and recorded by a stenographer. In it the victim was directed to cause a telegraphic money order to be sent and made payable to the codefendant Clounche.

(8) Clounche was arrested when he appeared at the Nevada telegraph office and requested the last money order.

(9) Clounche, Haas, and Calhoun, alias Martinelli, were acquainted with each other.

(10) One witness, a hotel bellman, testified that both Calhoun and Haas had admitted to him that "a fellow in Idaho" was being "shook down."