**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John M. FELLABAUM and John J. Pyne,**
**Defendants-Appellants.**

**Nos. 16780, 16781.**

United States Court of Appeals
Seventh Circuit.

March 7, 1969.

Rehearings Denied April 3, 1969.

William Levinson, Edward J. Calihan, Jr., Chicago, Ill., for defendants-appellants.

Thomas A. Foran, U. S. Atty., Michael B. Nash, Asst. U. S. Atty., Chicago, Ill.,

for plaintiff-appellee; John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before SWYGERT and CUMMINGS, Circuit Judges, and GORDON, District Judge.[1]

MYRON L. GORDON, District Judge.

These are appeals by John Pyne and John Fellabaum from judgments of conviction entered after jury verdicts of guilty against each of them. They were found guilty of a conspiracy under 18 U.S.C. § 371 to "travel and cause travel in interstate commerce, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity involving extortion * * * in violation of Title 18, United States Code, Section 1952." The indictment alleged six overt acts performed in furtherance of the conspiracy.

■ Indicted along with Pyne and Fellabaum were Sherman Kaminsky and Doss Smith. Kaminsky entered a guilty plea and thereafter became a fugitive; he still was a fugitive at the time of this appeal. Smith pleaded guilty and was sentenced to a prison term of four years. Another conspirator, Elwood Hammock, was not indicted. The facts are to be viewed in a light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942). A summary follows.

On April 19, 1966, Bruce Kaiser, who lived in Normal, Illinois, met defendant Fellabaum at a bar in Chicago, and shortly thereafter accompanied Fellabaum to a hotel room where Kaiser and Fellabaum engaged in a homosexual act. Fellabaum then demanded and got Kaiser's wallet and money. The following day Fellabaum called Hammock, the unindicted co-conspirator, who was then in New York. Hammock testified that after Fellabaum told him about the Kaiser incident, he told Fellabaum to come to New York. On April 21, Fellabaum arrived in New York, gave Hammock several cards from Kaiser's wallet, and informed Hammock that Kaiser looked like a good prospect for extortion.

Hammock then called Pyne, told him of the Kaiser affair, and advised Pyne to call Kaminsky and ask the latter to contact Hammock in Fayetteville, North Carolina, where Hammock was going. On April 23, Kaminsky called Hammock in Fayetteville and told him to come to Chicago to meet with Pyne. Hammock arrived on April 24 and called Pyne. Kaminsky, Pyne, and Hammock then discussed when they should "make a play" for Kaiser. Hammock called Fellabaum in New York, told him of his discussion with Pyne and Kaminsky, and directed him to come back to Chicago. Fellabaum agreed to do so.

On April 26, Hammock was arrested by agents of the Federal Bureau of Investigation on another charge. He was released in time to go to New York for a court appearance on May 6. On that day, he began full cooperation with the F.B.I. in the matter now before this court. No further action was taken by Hammock in the Kaiser matter without the knowledge and usually the accompaniment of the F.B.I.

Subsequent to May 6, Hammock met Kaminsky in Philadelphia and discussed doing something about Kaiser. Pursuant to this conversation, Hammock called Doss Smith on Kaminsky's instructions and told him to mail the wallet to Fayetteville; in the meantime, Smith had obtained the wallet from Fellabaum. Kaminsky then called Hammock and instructed him to come to Chicago. Hammock and two F.B.I. agents then left for Chicago, and Hammock picked up the wallet at the post office box to which he had previously mailed it. Kaminsky told Hammock he would be ready to move the following morning on the "Normal" matter (i. e., the Kaiser extortion).

The next morning, Hammock and Kaminsky drove to Pyne's house, and Kaminsky took a police badge (referred

---

1. The writer of this opinion is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

to as a "button") from Pyne's car to use in the extortion. After beginning the drive to Normal, the men concluded they would arrive at Normal too late in the day to accomplish their purposes, and Kaminsky therefore decided it would be better to wait a few days. Some discussion was then had as to whether they should continue "the Kaiser play". Apparently, however, no further effort was made to contact Kaiser prior to the time they were arrested.

This appeal presents a number of asserted errors in the trial court. They will be taken up individually.

### I. TRAVEL IN INTERSTATE COMMERCE

The first allegation of error is that the government failed to prove travel in interstate commerce, which the defendants contend is an essential element of the crime charged in the indictment. The defendants' argument runs as follows: The indictment charged a conspiracy to violate 18 U.S.C. § 1952, to-wit: "to travel and cause travel in interstate commerce, with an intent to promote * * * an unlawful activity, involving extortion. * * *"; the only overt act alleged in the indictment having to do with travel in interstate commerce was the trip on May 18, 1966 from North Carolina to Chicago by the co-conspirator, Hammock; since at that time Hammock had already begun cooperating with the F.B.I., this trip could not be in furtherance of the conspiracy; therefore proof of interstate travel by a co-conspirator, the "gravamen of the charge", is missing.

The following cases are cited to support the defendants' contention: Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1956); Brown v. United States, 150 U.S. 93, 14 S.Ct. 37, 37 L.Ed. 1010 (1893); and United States v. Morello, 250 F.2d 631 (2d Cir. 1957). These cases state the rule that acts done after a conspiracy has ended, or acts done by one not a co-conspirator at the time, may not be attributed to the alleged co-conspirators. See especially the *Morello* case at 635.

If Pyne and Fellabaum had been charged with the offense of interstate travel as a substantive crime under Title 18, § 1952, this question raised by the appellants would be relevant. However, the appellants err in contending that Hammock's travel was the "gravamen" of this indictment; defendants were charged with *conspiring* to violate § 1952, and interstate travel itself is not an essential element for such conspiracy.

A conspiracy to commit a crime is a different offense from the substantive crime which is the objective of the conspiracy. United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915). The gist of the offense of conspiracy under § 371 of Title 18 is the *agreement* to violate the substantive statute, which in this case is § 1952. United States v. Borelli, 336 F.2d 376 (2d Cir. 1964), cert. den. Cinquegrano v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

The government was obliged to prove that there was an agreement to commit the crime of interstate travel in aid of racketeering and to show at least one overt act toward that end; it was not necessary for the government to prove the accomplishment of the objective of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Downing v. United States, 348 F.2d 594 (5th Cir. 1965), cert. den. 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965); Lewis v. United States, 11 F.2d 745 (6th Cir. 1926). It is also not necessary that the prosecutor prove each of the overt acts alleged in the indictment. See United States v. Vittoria, 284 F.2d 451 (7th Cir. 1960).

The testimony in this case was sufficiently clear to enable the jury to find an intention on the part of the conspirators to travel or cause travel in interstate commerce in furtherance of the agreement. If the jury believed Ham-

mock's testimony that Kaminsky called him in North Carolina on May 16 and told him to come to Chicago, this was sufficient to support a finding of an intent to travel and cause travel in interstate commerce. The fact that this intention failed because of Hammock's cooperation with the F.B.I. is immaterial in a conspiracy prosecution. See Singer v. United States, 208 F.2d 477 (6th Cir. 1953).

## II. PROOF OF FELLABAUM'S INTENT AND KNOWLEDGE

■ The defendant Fellabaum also asserts that the government failed to prove that he had the requisite knowledge or intent to conspire to commit the crime charged in the indictment. Fellabaum urges that Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959) is precisely in point. In *Ingram,* the Supreme Court stated at pages 677, 678, 79 S.Ct. 1319, that

"It is fundamental that a conviction for conspiracy under 18 U.S.C. § 371 cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.' Pereira v. United States, 347 U.S. 1, 12, [74 S.Ct. 358, 98 L.Ed. 435]."

Evidence of a defendant's knowledge of the purpose of the conspiracy must be clear and unequivocal. It may, however, be inferred from the circumstances, acts, and conduct of the parties. Jacobs v. United States, 395 F.2d 469 (8th Cir. 1968).

■ On the other hand, in order to support a conspiracy conviction, it is not necessary that the defendant have knowledge of each and every detail of the plan; it is enough that he knew its essential nature. Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); Nassif v. United States, 370 F.2d 147 (8th Cir. 1966); United States v. Vittoria, 284 F.2d 451 (7th Cir. 1960).

The facts in this case show that after obtaining Kaiser's wallet, Fellebaum called Hammock in New York to tell him about the incident; the next day Fella-

baum went to New York, where he told Hammock that "the man looked real good because he took the turn real nice and he looked like a little Herman." (Tr. 91) (Hammock defined "taking the turn" as no resistance to the demand for the wallet; a "little Herman" is a man who is "real frightened".)

A few days later in Chicago, Hammock, in the presence of Pyne, called Fellabaum in New York. Hammock told him

"that I was in Chicago now and that I was talking with Pyne and Kaminsky, that they wanted him out of New York immediately and that we were deciding on whether we should go on the Normal man [Kaiser] tomorrow or whether we should go Wednesday, but at any rate, he had to get out of New York and get back to Chicago and we would discuss what would happen from there." (Tr. 118–19)

In response to this, Hammock testified that Fellabaum stated "he would make arrangements to come the next day". (Tr. 119)

■ There is ample evidence to show that Fellabaum knew that to commit the extortion he, or others, would have to travel in interstate commerce. See Jacobs v. United States, 395 F.2d 469 (8th Cir. 1968). Compare Nassif v. United States, 370 F.2d 147 (8th Cir. 1966). Upon the evidence before it, the jury was entitled to find that Fellabaum had, beyond a reasonable doubt, both the knowledge and intent necessary to commit the crime charged in the indictment.

## III. FELLABAUM'S ADMISSIONS IN THE ABSENCE OF COUNSEL

■ Fellabaum also urges that the trial court erred in admitting damaging statements made by him on three separate occasions to agent Tolan of the F.B.I. The heart of the objection is that Fellabaum's known counsel was not notified of any of the three sessions.

The trial court admitted the testimony after a hearing on the motion to suppress.

In the course of the hearing, Tolan testified that on each occasion Fellabaum was given proper warnings and advised of his rights, consistent with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). He further testified that Fellabaum had requested on each occasion that his counsel, a Mr. Sonenshine, not be present; he "did not want Mr. Sonenshine advised of the fact that he was being interviewed by the F.B.I." (Tr. 46–47, 59, 63). At each questioning Fellabaum signed written waivers of his right to counsel.

At the time of his statements to Tolan, Fellabaum was in New York awaiting sentencing after a guilty plea in another matter; Mr. Sonenshine represented Fellabaum in such case. In addition, Attorney Sonenshine also represented Sherman Kaminsky, a co-conspirator in the instant action.

No claim is made that agent Tolan actually pressured or coerced Fellabaum into making the statements. The issue comes down to this: May a defendant, who has an identified counsel, be questioned when, after adequate constitutional warnings, he has fully, repeatedly, and affirmatively declined the presence of counsel? We conclude, under the circumstances appearing in this case, that such questioning is fully consistent with all constitutional safeguards. As stated in *Miranda* at page 475, 86 S.Ct. at page 1628:

"an express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver."

This court stated in United States v. Smith, 379 F.2d 628, 633 (7th Cir. 1967), cert. den. 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (1967) that

"We are of the opinion that in post-*Miranda* cases the *Miranda* rule applies with *greater* force to preclude as unconstitutional the admission of statements resulting from in-custody interrogation *after known retainer or appointment of counsel* and without

counsel's presence or approval, unless it very clearly appears that the accused deliberately and understandingly chose to forego the assistance of counsel at such interrogation."

The burden of showing a waiver in this type of case rests heavily on the government, but we think that the factual situation in the case at bar is precisely what was referred to in the *Smith* case. Three separate times Fellabaum deliberately and affirmatively asserted that he did not want to have his counsel present after receiving full warnings as to his rights. No evidence to the contrary appears in the record. See United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968).

The motion to suppress agent Tolan's testimony was properly denied.

## IV. THE POST-CONSPIRACY STATEMENT

Pyne also assigns as error a ruling of the trial court which permitted the jury to apply against Pyne a post-conspiracy statement made by Fellabaum to agent Tolan.

Tolan testified that on June 20, 1966, Fellabaum told him about the meeting with Kaiser and the events that ensued in the hotel room. This admission to Tolan took place after the conspiracy, by the terms of the indictment, had ended. It was not, therefore, admissible against Pyne, a co-conspirator. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946). Fellabaum's statement to Tolan did not directly inculpate Pyne, and therefore the error did not reach constitutional proportions under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Cf. United States v. Lyon, 397 F.2d 505 (7th Cir. 1968); United States v. Guajardo-Melendez, 401 F.2d 35 (7th Cir. 1968).

Upon objection, the trial judge originally ruled that Fellabaum's admission was not to be applied to Pyne, and he instructed the jury that "the record may

show that this testimony at this time pertains only to the defendant Fellabaum". (Tr. 77) Again, a few moments later, the judge stated "at this time it applies only to the defendant Fellabaum". (Tr. 78) See Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

Two days later, the government moved to have the testimony of another witness admitted against both Pyne and Fellabaum on the ground that a prima facie case of conspiracy had been proved. After hearing argument in that matter, the court ruled that

> "All of the evidence that has been introduced, that the court indicated would apply just to either the defendant Fellabaum or to the defendant Pyne, or that would be considered in connection with the case, is now considered as against both the defendants here on trial and may be so considered by the jury." (Tr. 396–97)

It was in this manner, the defendant Pyne argues, that the testimony of two days earlier became applicable against Pyne, and it is to this ruling that the objection is now made. When the court made the ruling just quoted above, no reference was made in the presence of the jury to the earlier statement (by Fellabaum to Tolan); however, since that ruling was broad enough to include the statement of Fellabaum to Tolan, the ruling must be deemed to be error under *Krulewitch* and *Fiswick*, both cited above. However, for the reasons which follow, we find that the error was harmless and did not affect Pyne's substantial rights under rule 52(a), Federal Rules of Criminal Procedure. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. D'Antonio, 326 F.2d 151 (7th Cir. 1966), cert. den. 385 U.S. 900, 87 S.Ct. 204, 17 L.Ed.2d 131 (1966).

As just stated, the trial judge's challenged ruling made no specific mention

of the Fellabaum declaration; it was therefore not directly called to the attention of the jury. Also, the judge instructed the jury that:

> " * * * in determining whether a particular defendant was a member of the conspiracy, if any, you should consider only his acts and statements. He cannot be bound by the acts or declarations of the other participants. * * * "

(Tr. 708)
and that

> " * * * statements of any conspirator which are not in furtherance of the conspiracy, or made before its existence, or after its termination, may be considered as evidence only against the person making them." (Tr. 710)

See Calhoun v. United States, 368 F.2d 59 (9th Cir. 1966).

An additional reason for holding the error harmless is that there was substantial independent evidence of the entire operation of the conspiracy and of the guilt of Pyne and his associates. See *Calhoun*, supra. Hammock testified concerning his conversations and dealings with Fellabaum about the victim, Kaiser; Hammock also related his conversations with Pyne concerning the matter of extorting Kaiser. Hammock further testified that when he came to Chicago to meet with Pyne, at Kaminsky's instruction, they discussed "making a play" for Kaiser. Fellabaum's admission to Tolan was strong evidence of the homosexual event, but direct evidence is not needed to find a conspiracy; circumstantial evidence suffices. Miller v. United States, 382 F.2d 583 (9th Cir. 1967), cert. den. 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285, reh. den. 391 U.S. 971, 88 S.Ct. 2037, 20 L.Ed.2d 888 (1968).

Defendant Pyne contends that another error occurred during the trial when, in the presence of the jury, the prosecutor contended that certain evidence should be received on the ground "that the government has shown a prima facie case of conspiracy".

Pyne's attorney promptly moved for a mistrial, which the court denied, and then the jury was excused in order that the court could consider the receipt of the evidence in question. Thereupon, the court recalled the jury and ruled that the evidence introduced could be employed against both the defendants. No reference was made by the court to the government's claim that a prima facie case of conspiracy had been proved. Although the court supported the government's position with regard to the application of the evidence, it does not follow that the jury would read into such ruling a judicial approbation of the government's contention that a prima facie case had been proved. We find no error in this regard.

## V. JURY INSTRUCTIONS

The appellants bring to our attention several claimed errors in the trial court's instructions to the jury.

In instructing on the credibility of the unindicted co-conspirator, Hammock, the court gave the following instruction:

> "An accomplice is one who voluntarily participates in the commission or the planning of a crime.

> "*The witness Elwood Lee Hammock is an accomplice of the accused in this case.* As an accomplice his testimony must be closely examined and weighed with great care.

> "If the jury believes the testimony of an accomplice to be true beyond a reasonable doubt, that testimony is sufficient to convict the defendant, even though it is not corroborated by any other evidence." (emphasis added)

This instruction was taken from Judge LaBuy's "Jury Instructions in Federal Criminal Cases", § 6.07, 33 F.R.D. 523, 577. It is designated in the LaBuy manual as an "Alternative instruction where witness is an accomplice as a matter of law". Its ostensible, and very important, purpose is to warn the jury to look closely at an accomplice's testimony, and it is therefore intended to be beneficial, at least in that respect, to the defendant. The defendants contend, however, that this instruction resolved a material issue of fact: Hammock's involvement with Pyne and Fellabaum.

■ It is appropriate to instruct the jury that the witness (Hammock) was an accomplice and that he was involved in a crime. In cases such as this, that restates the obvious. The flaw is that this instruction, as given, can be understood to tell the jury that Hammock was an accomplice *of the accused as to this crime.* It is the jury's function to determine whether Hammock, an admitted accomplice, was an accomplice of the accused in the crime charged in the indictment. See the dissenting opinion in United States v. Battaglia, 394 F.2d 327 (7th Cir. 1968). We believe that the italicized portion of the quoted instruction is erroneous.

We hold, however, that the error, considered alone or together with the ruling criticized in section IV above, did not have "substantial influence" on the jury, and it is not deemed reversible error. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). This was not a weak case against the defendants. Cf. United States v. Donnelly, 179 F.2d 227 (7th Cir. 1950).

Both defendants also assert error in the failure to give instructions labeled "D", "I", and "J", all of which allegedly related to theories of defense.

■ The court should, upon request, give an instruction regarding any theory of the defense for which there is any evidence in the record. United States v. Phillips, 217 F.2d 435 (7th Cir. 1955). However, there is no error in refusing to give an instruction which duplicates one that is substantially the same. United States v. Kelly, 349 F. 2d 720 (2d Cir. 1965), cert. den. 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966)

The ▮▮▮ence of instruction "D" was adequately embodied in the general conspiracy charge, labeled G–27. Furthermore, the requested instruction incorrectly infers that Fellabaum must have committed an overt act subsequent to entering the conspiracy. All that is required is that *one* of the conspirators commit an overt act after they have joined together. If an instruction is at all incorrect, it may properly be refused. United States v. Kelly, *supra*.

Instructions "I" and "J" embodied the defense theory that the government had offered insufficient proof of the knowledge or intent of the defendant Fellabaum that there was to be "travel in interstate commerce". The substance of instruction "J" was covered in instructions G–27, C–1, and Fella–H, and it was therefore properly refused.

▮▮▮ Pyne also asserts error in the court's failure to give Pyne instructions "L" and "N". These instructions concerned the intent of the witness Hammock to commit the crime and also the defense of entrapment. We have already pointed out that the intent of the witness, Hammock, after May 6 is not important. With reference to entrapment, there is no evidence in this record that would establish such defense. As stated in Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963):

> "The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. * * * Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have *induced* the accused to commit the crime charged." (emphasis added)

See also Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). There was no error in refusing these instructions.

Accordingly, the judgments of conviction are affirmed.